## IN THE IOWA DISTRICT COURT IN AND FOR ALLAMAKEE COUNTY

| | |
|---|---|
| Veterans Memorial Hospital, an Iowa Municipal Hospital, | CVCV |
| Veterans, | |
| v. | **ORIGINAL NOTICE** |
| athenahealth, Inc. a/k/a Athena Healthcare, Inc., Defendant. | |

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby notified that there is now on file in the office of the clerk of the above court a petition in the above-entitled action, a copy of which is attached hereto. The plaintiff's attorney is Thomas O. Ashby, whose address is Baird Holm, LLP, 1700 Farnam Street, Suite 1500, Omaha, Nebraska 68102.

You are further notified that unless, within 20 days after service of this original notice upon you, you serve, and within a reasonable time thereafter file a motion or answer in the Iowa District Court for Allamakee County, at the courthouse in Waukon, Iowa, judgment by default will be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 833-3332. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

DOCS/2164407.1

## IMPORTANT
YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.

## EXHIBIT B

# STATE OF IOWA JUDICIARY

*Case No.* CVCV026585

*County* Allamakee

*Case Title* VETERANS MEMORIAL HOSPITAL V. ATHENAHEALTH, INC.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**

Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

---

*Scheduled Hearing:*

---

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 833-3332**  . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 11/07/2018 03:31:27 PM



*District Clerk of* Allamakee          *County*

/s/ Heidi Farley

**IN THE IOWA DISTRICT COURT IN AND FOR ALLAMAKEE COUNTY**

Veterans Memorial Hospital, an Iowa
Municipal Hospital,  Plaintiff,

v.

athenahealth, Inc. a/k/a Athena
Healthcare, Inc.,  Defendant.

CVCV _____

**PETITION**

COMES NOW Veterans and for claims for relief against Defendant states and alleges:

1.     Plaintiff Veterans Memorial Hospital ("Veterans") is an Iowa municipal hospital organized under the laws of the State of Iowa.

2.     Veterans has its principal place of business in Waukon, Iowa.  Veterans does no business in the Commonwealth of Massachusetts, has no employees, trustees or directors residing or officing there, and has no offices in the Commonwealth of Massachusetts.

3.     Veterans does not provide a significant amount of health care services to Massachusetts residents. Indeed, if Veterans provides any health care services to Massachusetts residents at all, they would be coincidentally provided in Allamakee County, Iowa, to a Massachusetts resident who happened to be passing through the county; and Veterans has no record of any such resident receiving health care services from Veterans in 2018.

4.     Defendant athenahealth, Inc., a/k/a Athenahealth, is a corporation organized under the laws of State of Delaware.

5.     Defendant at times pertinent hereto did business with Veterans in Allamakee County, Iowa, including but not limited to making material representations

and promises to Veterans in Allamakee County, Iowa (this "County") and sending multiple representatives to this County to, among other conduct, communicate with Veterans and allegedly to train Veterans.

6.      In 2015 and at certain times before and after 2015, Veterans had a contract for clinical records services with RazorInsights, LLC ("Razor") and one or more contracts for billing and collection and related financial services with Healthland, Inc., f/k/a Dairyland Healthcare Solutions ("Healthland"), as known to Defendant.   The Healthland arrangement is hereinafter referred to as the "Healthland Contract").

7.      Defendant in 2015 began asserting to Veterans that Defendant had acquired or was acquiring all ownership interest in Razor.

8.      On information and belief, Defendant did not dissolve Razor in 2015-17, after allegedly acquiring Razor, but instead, Razor continued to function as an alleged limited liability corporation and separate entity from Defendant.

9.      In and after 2015, Defendant proposed to Veterans various services, including but not limited to billing and collection services.   Defendant proposed that Defendant would be paid largely on certain collections formulas, i.e., a percentage of collections.

10.      Defendant sought to induce Veterans to terminate Veterans' contract with Razor and to shift Veterans' billing and collection services from Healthland to Defendant. Defendant thus reached out to Veterans, including multiple communications by Defendant in this County to Veterans, to try to convince Veterans to terminate the Razor contract, shift the billing and collection services from Healthland to Defendant, and enter into an allegedly new "Master Services Agreement" with Defendant.

11.    Among other representations, Defendant represented to Veterans as follows:

A.    To induce Veterans to contract, Defendant undertook misrepresentations, engaged in nondisclosures, and undertook  what Veterans believes to be concealments: Defendant held itself out as providing a healthcare revenue cycle workflow that would be effective with payers and have the latest payer changes, with no additional work needed by Veterans' staff, and that Defendant's systems/cloud solutions would have drug charges populated into Veterans patient claims when the pertinent drug was input by a Veterans biller.  Defendant represented to Veterans that various Defendant representations made to Veterans in this County could be relied on, among other representations. Defendant held itself out as providing utmost visibility of "real-time" billing/collection status and results.  Defendant represented its software and systems/cloud solutions would be seamless.   Actually, the reality, as known to Defendant, was quite to the contrary.

B.    Defendant also represented to Veterans before any alleged contracting by Veterans with Defendant, that Defendant's "Collector" service or product offering was nearly complete and that "Collector" was scheduled to be complete by the second quarter of 2016.  In fact, on information and belief, "Collector" was not completed by the second quarter of 2016 and lacked some significant capabilities as implemented with Veterans.

C.    Defendant represented to Veterans, before January 2016, and indicated that if Veterans desired only to use a Defendant offering related to "clinical" or records,

3

that Veterans could continue with that for years after December 2015, and without adding other Defendant "products" for billing and collection and/or financial ledgers/records. Hereinafter, "Financial Offering" means one, some or all of Defendant's products or services for billing and collection and/or for General Ledgers ("GL") and related financial reports/records. In summer 2016, however, after inducing Veterans to allegedly contract with Defendant for some "clinical" or records offering, Defendant represented to Veterans that Defendant's clinical offering is not designed to operate without collector/financials in place and that Defendant would not support the clinical offering without the collector/financial offerings in place past 2016 year-end and/or made similar assertions. As known to Defendant, Veterans was having significant problems with Defendant's offering for "clinicals" or records. Defendant also induced Veterans to allegedly contract for and onboard the Financial Offering by saying, contrary to Defendant's earlier inducement representations, that using the Financial Offering was necessary for and would cause the functioning of Defendant's clinicals package and solve the aforesaid problems with Defendant's clinicals package. But, after Veterans was induced to allegedly contract for and onboard the Financial Offering, Veterans eventually determined that Defendant's statement in the preceding sentence were wrong.

D.    Before Veterans allegedly agreed to and "went live" with a Financial Offering, Defendant indicated that the Healthland Contract's GL and billing/collection functions would no longer be supported by the Healthland Contract vendor or its designees after year-end 2016. On information and belief, this was wrong and

4

the Healthland Contract's GL and billing/collection functions were supported for a significant time after year-end 2016.

E.  After Defendant purported to enter into a Veterans contract, Veterans reports that Defendant continued to misrepresent situations and, Veterans believes, conceal important information.   For instance, Defendant represented that Veterans could submit charges for ambulance services combined with other charges and that such would be processed and paid fine due to "diagnosis pointers" in Defendant's computer software solutions and that such computer techniques were in place to solve the situation.  (Defendant's representation was incorrect, for example, as to Medicare claims.)  For another instance, Defendant did not disclose to Veterans the truth of Veterans' need to submit certain charges to Blue Cross/Blue Shield ("Blue Cross") on a Type of Bill 131. When Veterans inquired about this need, Defendant wrongfully told Veterans there was no such need and represented to Veterans that a different type of bill should be used.

F.  Defendant failed to provide adequate training and coaching, despite Veterans' repeated requests.   Defendant also failed to provide training on significant aspects of GL, fund flow, billing, collections, data and process visibility, etc., that Defendant had promised to provide to Veterans.

G.  Defendant's failures to comply with its representations and wrongful inducements to Veterans, on information and belief, also extended to representations concerning Defendant's "general ledger" capabilities and availability and training.

H.  Defendant represented, before Veterans agreed to and "went live" with any "Collector" package, that Defendant's offerings would improve reimbursements;

that Defendant would work with Veterans to fine-tune the Defendant offerings to meet Veterans' needs; Defendant would contact prospective payors if Defendant expected to receive an acknowledgment and did not; Defendant would undertake certain manually posting if needed, and made other representations. On information and belief, at least some of these were wrongful communications by Defendant and Defendant or its representatives lacked effective systems, staffing or intent to fully conduct itself as represented.

I.     Defendant also made representations and promises to Veterans after Veterans allegedly contracted with Defendant.

J.     Defendant's Regina Dolan represented that Veterans should not worry about the failure of Blue Cross to pay Veterans because Defendant had fixed Defendant's failure to properly bill Blue Cross. However, Defendant had not fixed the Blue Cross billing problem. Defendant at the time of this misrepresentation either knew the problem had not yet been fixed or acted in reckless disregard of the reality that the problem had not yet been fixed.

K.     Defendant intentionally tried to blame failures of proper claim preparation on Veterans, but even Blue Cross itself acknowledged or indicated the problem was not with Veterans but was with Defendant.

L.     On information and belief, Defendant concealed from Veterans that a supposed "fix" or cure of Defendant's was to bill Blue Cross in paper format. The failure of the paper billing further harmed Veterans and delayed collection of Veterans' legitimate claims that were insured by Blue Cross.

M.    Defendant asserted it would proactively analyze each organization's healthcare revenue cycle management process, determine areas of improvement, and coach the staff through an action plan created to drive positive results for Veterans. Defendant did not fulfill this representation. On information and belief, Defendant at the time of seeking to convince Veterans to terminate the Razor contract had no intention of promptly determining areas of improvement for Veterans revenue cycle management and coaching the staff through an action plan created to drive positive results for Veterans.

N.    Relatedly, when Veterans pointed out various problems with Defendant's approach, Defendant denied that the particular technique or instruction by Defendant was problematic and instead typically instructed Veterans to "keep submitting bills" because, according to Defendant, Veterans supposedly did not know what Veterans was talking about.

O.    For many weeks, Defendant was unable to successfully bill Blue Cross. Eventually, Defendant admitted via its representative (who was visiting Veterans' hospital in this County at the time), that Defendant had a problem in billing Blue Cross but asserted that Defendant had found the problem and that the problem was "too complicated to explain" to Veterans. Veterans insisted that proper billing of Blue Cross by Defendant occur, but even thereafter proper billing by Defendant did not occur.

12.    Defendant's conduct in seeking to induce Veterans to reduce or quit using the Healthland contract and/or terminate the Razor contract included misrepresentations and wrongful nondisclosures by Defendant. Without limiting the

generality of the preceding sentence, examples include representations and promises that Defendant was equipped with sufficient staff, administrative directions and intentions, and experience and expertise to effectively and timely bill Blue Cross, Medicare (the federal government Medicare program and its agents), and other commercial payors, and to allow Veterans timely and complete visibility of financial cash flow, claims submissions, claims status and related claims information; and to thoroughly and effectively train Veterans' employees, including but not limited to "billers" who enter specific charge data for billing by Defendant, technology staff, and executives responsible for financial decisions and cash flow management.

13.    Veterans had at times pertinent to this Complaint and still has property interests and rights in Veterans' data, including but not limited to patient charge data, cash flow data, bank account transactions and reports, and notifications concerning technological functioning ("Data Rights").

14.    Veterans also has property interests in receivables for Veterans' patient accounts, including but not limited to receivables and contract rights with Blue Cross patients, Medicare patients, patients with other commercial health insurance acceptable to Veterans, and self-pay portions of patient's accounts (whether from uninsured patients, co-pays or deductibles)("Account Rights").

15.    Defendant's conduct naturally, directly and proximately caused injury and damages to Veterans, including but not limited to significantly injuring Veterans' Data Rights and Account Rights.

16.    Veterans' Data Rights and Account Rights include interests that are non-financial, such as but not necessarily limited to proper access to the Data Rights and

8

Case 1:19-cv-10372-PBS  Document 1-2  Filed 12/14/18  Page 11 of 29
E-FILED 2018 NOV 07 3:10 PM ALLAMAKEE - CLERK OF DISTRICT COURT

Account Rights allowing Veterans to better serve its patients and thus improve Veterans' community and this County; interests inaccurate data so that patients and payors interacting with Veterans have confidence in Veterans and Veterans' provision of hospital services and supplies, and promoting health in Veterans' community because patients receiving timely, accurate handling of their claims are more likely to have confidence in obtaining necessary or desirable hospital services in the future.

17.     Defendant's conduct also financially damaged Veterans.

18.     After Defendant induced Veterans to terminate Veterans' Razor contract and to cease using the Healthland contract for billing and collection, it eventually became apparent to Veterans that Defendant did not perform as it represented it would concerning software to provide Veterans' employees with accurate drug charges. Veterans confronted Defendant about this misrepresentation, but Defendant intentionally declined to fix the situation and provide software that would allow accurate drug charges to be seen and input by Veterans' employees.

19.     Defendant's conduct described in the immediately preceding paragraph forced Veterans' data processing staff to look up individually the proper charge for various drugs, consuming a huge amount of Veterans' staff time and, as Defendant knew or but for reckless disregard of the situation would have known, placed Veterans in an impossible position for prompt billing due to the impossibility of devoting the staff time to look up charges and errors for the various drugs.

20.     Veterans is a small municipal hospital that has no in-house legal staff or contract negotiation specialists.  Defendant told Veterans that certain information

outside the confines of any written document could be considered by Veterans in deciding whether to contract with Defendant.

21. Defendant's conduct injured Veterans' Account Rights and, on information and belief, Data Rights.

22. Without limiting the generality of the foregoing, Veterans' injuries and damages include but are not limited to:

A. Lost time value of money on patient account claims that should have been paid much more quickly;

B. Inability to collect from certain Medicare, Blue Cross, and other benefit programs or insurers due to Defendant's failure to timely and properly bill and Defendant's other conduct;

C. Deprivation of cash flow such that Veterans was forced to obtain a $750,000.00 loan at 5% annual interest rate. The interest payable on such loan by Veterans is estimated at $37,500.00.

COUNT I: Tortious Interference

23. All other allegations in this Complaint are incorporated in this Count by this reference.

24. Defendant's conduct interfered with Veterans' valid business relationships including Veterans' Razor contract and/or Healthland Contract.

25. Defendant's conduct was not justifiable.

26. Defendant's interference directly, naturally and proximately caused significant damage to Veterans, as described hereinabove.

10

27.     Compared with Veterans' experience and prospects under the Razor contract and/or Healthland Contract, Defendant's implementation of its alleged contract with Veterans caused severe lack of timeliness and effectiveness in handling Veterans' patient claims, Data Rights and Account Rights.

COUNT II: Misrepresentations

28.     All other allegations in this Complaint are incorporated in this Count by this reference.

29.     Defendant made material misrepresentations to Veterans.

30.     Defendant had a pecuniary interest in the transaction(s) concerning which Defendant made misrepresentations, i.e., in trying to convince Veterans to terminate the Razor contract and/or to reduce and cease use of the Healthland Contract, to enter into the "Master Services Agreement" and the billing and the collection component of said "Master Services Agreement," and in implementing said billing and collection component.

31.     Defendant's business includes providing information and analysis, and Defendant held itself out to Veterans and others as providing information and analysis in Defendant's business.

32.     Defendant's misrepresentations are material and significant.

33.     On information and belief, Defendant intended to deceive Veterans by such misrepresentations and/or was negligent in communicating with Veterans in connection with such misrepresentations.

34.     Defendant's misrepresentations directly, proximately and naturally damaged Veterans.  Said damage is significant and ongoing.

11

35.     Defendant's misrepresentations were a material inducement to Veterans entering into the "Master Services Agreement" and the billing and collection component thereof and in reducing and ceasing to use the Healthland Contract

36.     If Defendant had not made the misrepresentations, Veterans would have conducted itself in a significantly different manner and would not have suffered certain damages it incurred.

COUNT III:  Nondisclosure/Concealment

37.     All other allegations of this Complaint are incorporated in this Count by this reference.

38.     Defendant failed to disclose to Veterans material and significant facts concerning entering into and implementing the "Master Services Agreement" and the billing and collection component thereof.

39.     On information and belief, Defendant's conduct also constituted concealments of information from Veterans.

40.     Defendant's misrepresentations occurred both before and after Veterans entered into the "Master Services Agreement" and the billing and collection component thereof.

41.     Defendant's nondisclosures and/or any concealments occurred both before and after Veterans entered into the "Master Services Agreement" and the billing and collection component thereof.

42.     Under the circumstances, Defendant had a duty to disclose to Veterans the true facts pertinent to Defendant's inducements and communications and contract implementation, including but not necessarily limited to Defendant's lack of sufficient

12

experienced staff and/or administrative capability and commitment to timely and effectively implement the billing and collection component of the "Master Services Agreement," the fact that Defendant did not know that a pertinent Type of Bill would be acceptable to payors, the fact that Defendant did not have "modifiers" software sufficient to solve combined billing problems as concerns certain payors, and the fact that Defendant intended to submit "paper claims" to Blue Cross because Defendant's attempts to electronically bill Blue Cross had failed through no fault of Veterans. Defendant also failed to disclose to re/solution, a consulting firm that Defendant knew Veterans had retained in 2017 and that Defendant knew was authorized by Veterans to receive the data, various Data Rights and Account Rights. This nondisclosure by Defendant injured Veterans Data Rights and Account Rights and also contributed to delay in Veterans' ability to timely and effectively bill and collect for patient charges.

43. Defendant knew Veterans was relying on Defendant to disclose Defendant's true capabilities and experience and knowledge and to disclose Defendant's efforts in billing Blue Cross and other payors and to disclose properly and promptly to re/solution.

44. Defendant's nondisclosures and/or tortious concealments of material facts significantly and materially damaged Veterans.

45. Defendant's aforesaid conduct was a direct, natural and proximate cause of damage to Veterans.

### COUNT IV: Declaration

46. All allegations of the Complaint are incorporated in this Count by this reference.

13

47.    The Court has jurisdiction to declare whether Defendant breached its contractual and representational duties owed to Veterans.

48.    Defendant engages in trade or commerce with various entities, including but not limited to Veterans.

49.    On information and belief, Defendant's conduct constitutes unfair or deceptive acts or practices.

50.    Defendant's conduct damaged Veterans directly, proximately and naturally.

51.    Before filing suit, Veterans through one or more representatives demanded a remedy from Defendant.  Defendant denied liability and declined to provide a substantial remedy.

52.    On information and belief, Defendant had reason to know Veterans would incur attorney fees on account of Defendant's conduct. Veterans has in fact incurred significant attorney fees.

53.    An actual case and controversy exist concerning breach by Defendant of contractual and representational duties owed to Veterans.  An actual case or controversy exists concerning whether Defendant should be liable for Veterans' reasonable attorney fees and other legal expense.  Without limiting the generality of the foregoing, Defendant has failed to properly remedy its breaches of duties owed to Veterans and, on information and belief, denies that Veterans is entitled to the millions of dollars of damages requested by Veterans.   Some of these duties arise independently of any contract between Veterans and Defendant.

14

54. Declaring whether Defendant has breached representational and contractual duties owed to Veterans is in the interest of justice. So is declaring whether Defendant should be held liable for Veterans' reasonable attorney fees and other legal expense. Failure to make such declarations will be inequitable to Veterans.

55. Having declared Defendant in breach of representational and/or contractual duties owed to Veterans and that damages to Veterans have resulted, the Court should go on to enter judgment against Defendant and in favor of Veterans for such damages, legal expense, plus prejudgment and post-judgment interest to the extent allowed by law, plus such other relief as the Court deems equitable.

COUNT V: Injunction and Equitable Relief

56. All other allegations of this Complaint are incorporated in this Count by this reference.

57. Defendant failed to properly protect Veterans' Data Rights and Account Rights.

58. Veterans was damaged by Defendant's foregoing failures.

59. On information and belief, claims-related documents that are part of the patient's complete medical record are not being preserved properly by Defendant or provided to Veterans so Veterans has its own copy of them.

60. Defendant promised to provide Veterans with ongoing updated advice on dealing with insurance and other benefit program payors and did not effectively do so.

61. The Court has power to enjoin Defendant from destruction of any significant records pertaining to Defendant's Data Rights and Account Rights and to enter a mandatory injunction enjoining Defendant to provide information to Veterans

(including scanned documents) on health insurance payors and other benefit program payors in terms of dates, claim identification, and other information useful for Veterans' evaluation of how to re-submit or initially submit claims Defendant was supposed to bill on behalf of Veterans.

62.     On information and belief, Veterans lacks an adequate remedy at law as concerns potential document destruction and failure to provide information to Veterans.

COUNT VI: Gross Negligence

63.     All other allegations of this Complaint are incorporated in this Count by this reference.

64.     Defendant's conduct described in this Complaint includes but is not limited to gross negligence as concerns Veterans' rights and interests.

65.     For example, without limiting the generality of the preceding paragraph, Defendant repeatedly was unable to successfully submit/file Blue Cross Blue Shield (also known as "Wellmark") claims; failed to  properly and promptly allow billing for Medicare to be separated as to different encounters or procedures on the same date; failed to provide an ability to properly and promptly bill charges for services if a patient received multiple services from Veterans on the same day and also represented that Veterans could submit such charges and they would be processed and paid well due to "diagnosis pointers" and that such computer techniques were in place to solve the situation; failed to provide appropriate computer fields/rules to allow reasonable, prompt billing and data reporting for patients who transitioned from inpatient to outpatient care with Veterans; failed to provide a reasonable GL "solution" despite repeated requests and the major defects of the GL "solution" Defendant provided in a hospital setting; and

failed to properly deal with a report, mandated from Veterans by the Iowa Hospital Association, known as the IPOP (inpatient outpatient) report despite repeated requests by Veterans, requiring Veterans to fix thousands of errors in the IPOP report.

66.    Such grossly negligent conduct directly, naturally and proximately caused damage to Veterans.

67.    Veterans' damages include but are not necessarily limited to:

A.    What would have been collectible accounts receivable that were not submitted to insurance companies or other payors in a timely, proper manner, due to Defendant's failure to properly act on Veterans' behalf.

B. Veterans' employee time spent attempting to perform Defendant's obligations to Veterans, when Veterans came to suspect Defendant was not presenting bills to payors for settlement properly and timely.

C.    Lost collections from Veterans' accounts receivable accrued for dates of service affected by Veterans' additional mitigation efforts that started in August, 2017.

D.    Defendant's tortious conduct and breaches of duty caused Veterans to consume other significant employee staff time.  One example is the IPOP project.  Veterans described to Athena before the ostensible contracting the need for the Defendant services to be able to efficiently complete, populate and transmit the IPOP reports submitted to the Iowa Hospital Association.  Defendant represented the services being purchased would handle that well.   Despite this, a major breach occurred.

E.  Veterans incurred additional outside audit expense with its CPA firm.

F.  At least $37,500 in costs, to secure bridge financing for Veterans, which was required to maintain liquidity when Veterans' cash flow faltered as a result of Defendant's failures concerning Veterans' accounts receivable.

68.     Leading up to the alleged signing of the "Master Services Agreement," Defendant never stated that Veterans had to eventually contract for Defendant's "Financial Offering" in order for Defendant's "Clinicals" "solution" or package to work properly.  Indeed, the representation was that "Clinicals" could be purchased by itself and would work superbly.  Later, Defendant asserted that the failure to have the Financial Offering was a reason "Clinicals" was not working satisfactorily in certain significant respects.

69.     Defendant's conduct significantly exceeds ordinary negligence and despite repeated request by Veterans, was not promptly remedied.

70.     On information and belief, Defendant intentionally and willfully delayed fulfillment of some obligations under the alleged contract, such as those related to the IPOP report and provision of a reasonable and conforming GL "solution" or package on Defendant's sale to Veterans.

### COUNT VII:  Alternative Contract Claim

71.     All other allegations of this Complaint are incorporated in this Count by this reference.

72.     Defendant's conduct breached contractual obligations that Defendant purported to establish with Veterans.  Alternatively, if Veterans is not awarded complete relief due to wrongful inducement of Veterans contracting with Defendant, Veterans is entitled to remedies for breach of contract.

73.     To the extent Defendant asserts any contractual limitation on liability, remedies or warranties, the Court should declare whether such limitation is binding on the parties and, for instance, whether such limitation fails of an essential purpose and is void or otherwise not binding and/or the alleged contract is unconscionable as to Veterans.

74.     Nothing in this alternative cause of action shall be deemed to waive any rights of Veterans for wrongful inducement of any alleged contract with Defendant.

WHEREFORE, Veterans respectfully requests:

A.     Judgment in favor of Veterans and against Defendant for Defendant's unjustified interference with Veterans' contractual rights, including but not necessarily limited to the Healthland contract and/or Razor contract, Data Rights and Account Rights, prejudgment interest and post-judgment interest to the extent allowed by law, and Veterans' costs accrued and accruing;

B.     Declaration of whether Defendant breached its contractual and representational duties owed to Veterans (including but not limited to wrongful inducement of any alleged contract) and, if so, that the Court go on to enter judgment against Defendant and in favor of Veterans for all resulting damages, attorney fees and other legal expense to the extent allowed by law, prejudgment and post-judgment interest to the extent allowed by law, and Veterans' accrued and accruing costs;

C.     That the Court enjoin Defendant from destroying or allowing destruction by any of its vendors of data related to or constituting Veterans' Data Rights and/or Account Rights; that the Court declare whether a mandatory injunction should be entered as requested hereinabove in Paragraphs 59-62; and declare whether

accrued and accruing costs herein should be taxed against Defendant and in favor of Veterans; and

D.   Judgment in favor of Veterans and against Defendant and for Defendant's gross negligence that harmed Veterans, prejudgment interest and post-judgment interest to the extent allowed by law, and Veterans' costs accrued and accruing;

E.   Alternatively, if the Court does not award to Veterans the full relief requested hereinabove for wrongful inducement of any contract with Defendant for billing, collection, and related financial services, that the Court award Veterans damages for breach of contract by Defendant.

## JURY DEMAND

Veterans hereby demands a trial by jury of all claims so triable.

Dated:  November 7, 2018.

VETERANS MEMORIAL HOSPITAL, an Iowa municipal hospital, Plaintiff

By:   _Thomas O. Ashby_
      Thomas O. Ashby (#8220)
      ICIS #AT0000527
of    BAIRD HOLM LLP
      1700 Farnam Street
      Suite 1500
      Omaha, NE  68102-2068
      Phone: 402-344-0500
      Plaintiff's attorneys

DOCS/2164330.4

20

# RETURN OF SERVICE

## In the Iowa District Court For ALLAMAKEE COUNTY

Case Name:   VETERANS MEMORIAL HOSPITAL

      vs

         ATHENAHEALTH INC AKA ATHENA HEALTHCARE INC

Case No.:   CVCV026585        Sheriff's File No.:  18037271

Notice rec'd :  11/8/2018

## STATE OF IOWA POLK COUNTY } SS.

I certify that I served a copy of :  ORIGINAL NOTICE/PETITION/JURY DEMAND

to    ATHENAHEALTH INC AKA ATHENA HEALTHCARE INC     Type of service:  COMPANY REPRESENTATIVE

by delivering a copy to:  laura graham

a person at least 18 years of age  described as

Address of service:  REG AGENT: CT CORP 400 E COURT AVENUE STE 110 DES MOINES, IA 50309

Date and time of service:  11/15/2018 9:50 AM

Trips:

 There are no additional service attempts

Reason: ,

  **FEES:**

MILEAGE FEE ($1.09)

PROCESSING FEE ($60.00)

Total:$61.09

                **BILL McCARTHY        Sheriff**

                      **Polk County, Iowa**

                JEFF FUNARO   **Deputy/Server**

## IN THE IOWA DISTRICT COURT FOR ALLAMAKEE COUNTY

| | |
|---|---|
| Veterans Memorial Hospital, an Iowa Municipal Hospital,<br><br>    Plaintiff,<br><br>    vs.<br><br>athenahealth, Inc. a/k/a Athena Healthcare, Inc.,<br><br>    Defendant. | Case No. CVCV026585<br><br>DEFENDANT'S UNRESISTED MOTION TO EXTEND DEADLINE TO SERVE RESPONSE TO PETITION |

Defendant athenahealth, Inc. ("Athena") moves the Court for an Order extending the deadline for Athena to serve a response to the Petition filed by Plaintiff Veterans Memorial Hospital, an Iowa Municipal Hospital ("Veterans").

1.    Athena respectfully requests that the Court enter an order extending the deadline for Athena to serve a response to the Petition up to and including December 21, 2018.

2.    The Iowa Rules of Civil Procedure provide that the Court may extend the deadline for cause shown. Iowa Rule of Civil Procedure 1.443(1) provides:

> When by the rules in this chapter or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion do the following:
>
> a.    With or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order…

Iowa R. Civ. P. 1.443(1).

3.    Pursuant to Rule 1.303, the deadline for Athena to serve a response to the Petition is December 5, 2018.  Iowa R. Civ. P. 1.303.

4.    Due to the schedule of the parties and counsel, Athena requests additional time to serve a response to the Petition.

5.      Counsel for Athena has conferred with counsel for Veterans, and counsel for Veterans consents to the requested extension of time.

Therefore, Athena respectfully requests that the Court enter an order extending the deadline for Athena to serve a response to the Petition up to and including December 21, 2018, and for such other relief as the Court deems just and proper.

Dated: December 4, 2018                     Respectfully submitted,

                                            /s/ Chad D. Brakhahn
                                            Chad D. Brakhahn        AT0010883
                                            Robert S. Hatala        AT0003340
                                            Simmons Perrine Moyer Bergman PLC
                                            115 Third Street, S.E., Suite 1200
                                            Cedar Rapids, IA 52401-1266
                                            Telephone: (319) 366-7641
                                            Facsimile: (319) 366-1917
                                            Email: cbrakhahn@spmblaw.com
                                            Email: rhatala@spmblaw.com
                                            Attorneys for Defendant athenahealth, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2018, I electronically filed the foregoing document with the Clerk of Court using the EDMS system with a copy being sent via electronic notice to counsel of record.

Thomas O. Ashby
Baird Holm LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Telephone: (402) 636-8280
Fax: (402) 344-0588
Email: tashby@bairdholm.com
Attorney for Plaintiff

                                            /s/ Chad D. Brakhahn

**IN THE IOWA DISTRICT COURT FOR ALLAMAKEE COUNTY**

| | |
|---|---|
| Veterans Memorial Hospital, an Iowa Municipal Hospital,<br><br>    Plaintiff,<br><br>vs.<br><br>athenahealth, Inc. a/k/a Athena Healthcare, Inc.,<br><br>    Defendant. | Case No. CVCV026585<br><br>ORDER |

Defendant's Unresisted Motion to Extend Deadline to Serve Response to Petition comes before the Court. The Court, having reviewed the motion and the file, finds that the motion should be granted.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Unresisted Motion to Extend Deadline to Serve Response to Petition is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the deadline for Defendant to serve a response to the Petition shall be December 21, 2018.



State of Iowa Courts

**Type:**           OTHER ORDER

**Case Number**    **Case Title**
CVCV026585         VETERANS MEMORIAL HOSPITAL VS ATHENAHEALTH, INC.


So Ordered

John J. Bauercamper, District Court Judge,
First Judicial District of Iowa

Electronically signed on 2018-12-05 13:04:25     page 2 of 2

## IN THE DISTRICT COURT OF ALLAMAKEE COUNTY, IOWA

Veterans Memorial Hospital, an Iowa
Municipal Hospital,  Plaintiff,

v.

athenahealth, Inc. a/k/a Athena
Healthcare, Inc., Defendant.

CVCV 026585

**MOTION TO ALLOW DISCOVERY**

COMES NOW Plaintiff and hereby moves the Court to allow Plaintiff, Veterans Memorial Hospital ("Veterans"), and Defendant to engage in discovery without awaiting any Iowa Rule of Civil Procedure 1.507 discovery conference. In support, Veterans states:

1.      Veterans believes and alleges that it has been damaged very significantly by Defendant, even to the point that Veterans needed and borrowed from a third party hundreds of thousands of dollars for operating purposes.

2.      Veterans is a small organization compared to the Defendant, a publicly-traded company with a market capitalization that currently exceeds $5.4 billion ($5,400,000,000).

3.      Allegedly wrongful conduct by Defendant occurred in and after 2015. Veterans' counsel sent a demand letter in July, 2018, to Defendant, and in-house counsel for Defendant replied July 13, 2018. Defendant has had numerous months to consider Veterans' concerns.

4.      A former officer of Plaintiff is now working part-time due to a health situation that included significant hospitalization. It Is not expected that this former officer return to full-time work. This provides an additional reason to proceed promptly with discovery.

5.      It is in the interests of justice that discovery be allowed to proceed.  The parties can confer hereafter as provided in the Iowa Rules of Civil Procedure, but it is in the interest of justice that discovery be allowed in the meantime.

WHEREFORE  Plaintiff  respectfully  requests  entry  of  an  order  declaring  that discovery shall be allowed in this matter without need to await any discovery conference of the parties.

Dated:  December 13, 2018.

VETERANS MEMORIAL HOSPITAL, Plaintiff

By: /s/Thomas O. Ashby

of    Thomas O. Ashby (Iowa Bar No. 8220)
      BAIRD HOLM LLP
      1700 Farnam St
      Suite 1500
      Omaha, NE  68102-2068
      Phone: 402-344-0500
      Fax: 402-344-0588
      tashby@bairdholm.com
      Its Attorneys

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent on December 13, 2018, by regular US Mail first class postage prepaid, to:

    athenahealth, Inc., a/k/a Athenahealth
    c/o CT Corporation System
    Registered Agent
    400 E. Court Ave
    Des Moines, IA, 50309

/s/ Thomas O. Ashby
Thomas O. Ashby

DOCS/2182677.1

2